UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOLEON PANAGOPOULOS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. NO.: 1:21-CV-11873 |
| GENUINE FOOD LAB, LLC, AND JEFFREY MILLS | ) ) ) ) |
| Defendants. | ) ) |

**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS,
AND JURY CLAIM**

NOW COME the defendants, Genuine Food Labs, LLC ("Genuine Food"), and Jeffrey Mills (collectively the "Defendants"), by and through counsel, DENNEHY LAW, and respond to the Complaint filed by Timoleon Panagopoulos ("Plaintiff"), paragraph by paragraph as follows:

**PARTIES**

1. Admitted.

2. Admitted that Genuine Food is a Delaware corporation, but denied that its principal place of business is in Massachusetts.

3. Admitted that Jeffrey Mills is a resident of Maine, but denied that he has an address in Weymouth, Massachusetts and/or that he operates any business in his individual capacity.

4. Denied.

## **JURISDICTION AND VENUE**

5. Admitted.

6. Admitted that Suffolk County was the proper venue for state court filing, but denied that all of the wrongful conduct occurred there.

## **FACTS**

7. Admitted.

8. Admitted that Mr. Mills has an ownership interest in Genuine Food; however, the business is a limited liability company and so the appellations applied to his titles are incorrect and denied.

9. Denied.

10. Admitted.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Admitted that the Plaintiff had industry contacts; however, the Defendants cannot admit or deny whether the Plaintiff had good credit.

16. Denied. In further answering the Defendants stat that the allegation in this paragraph have been mischaracterized.

17. Denied.

18. Denied. In further answering, the Defendants state that the Plaintiff was never hired as an employee of genuine Food. Rather, he work in the role of a distributor and/or middle person under his own sole proprietorship and/or a limit liability company

in which he has ownership. The Plaintiff was entitled to commissions from suppliers with whom he worked but he was not entitled to commissions from Genuine Food.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Admitted that the Plaintiff was likely compensated from suppliers, but the remainder to the allegations in this paragraph are denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. The Defendants are without sufficient information to admit or deny the allegations contained in this paragraph because the Plaintiff was an independent contractor who made arrangement for payment of commissions from suppliers of products, which in turn were sold to Genuine Food.

33. The Defendants dispute the Plaintiff was ever an employee of Genuine Food. In further answering, the Defendants state that the letter attached to the Complaint speaks for itself.

## COUNTS

### COUNT I
### FAILURE TO PAY WAGES IN VIOLATION OF THE MASSACHUSETTS WAGE ACT

34. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

35. Denied.

36. Denied. In further answering, the Defendants state that much of this paragraph merely speaks to legal conclusions for which a response is not required.

37. Denied.

38. Denied.

### COUNT II
### BREACH OF CONTRACT

39. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

## COUNT III
## PROMISSORY ESTOPPEL

44. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

45. Denied.

46. Denied.

## COUNT IV
## FRAUD

47. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

## COUNT V
## NEGLIGENT MISREPRESENTATION

55. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

## COUNT VI
## UNJUST ENRICHMENT/QUANTUM MERUIT

62. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

63. Denied.

## COUNT VII
## UNFAIR AND DECEPTIVE BUSINESS PRACTICES

64. This is a paragraph of incorporation, and therefore a response is not required. To the extent that allegations can be inferred from this paragraph, they are denied.

65. Denied. In further answering, the Defendants state that much of this paragraph merely speaks to legal conclusions for which a response is not required.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

## **AFFIRMATIVE DEFENSES**

1. The Complaint fails to state a claim in which relief can be granted.

2. The Complaint fails for lack of personal jurisdiction.

3. The Complaint fails for lack of subject matter jurisdiction.

4. The Complaint fails due to accord and satisfaction.

5. The Complaint fails due to waiver, laches, and/or estoppel.

6. The Complaint fails due to Breach of Contract by the Plaintiff.

7. The Complaint fails due to the Plaintiff's unclean hands.

8. The Complaint fails where the Plaintiff sued parties who were not privy in contract with him as to the damages he claims, did not employ him, and/or cannot be held liable under the law applicable to the facts of this matter.

9. The Complaint fails due to misconduct of the Plaintiff, which includes Breach of Contract and breach of the Covenant of Good Faith and Fair Dealing.

10. The Complaint fails due to the Plaintiff failing to exhaust his administrative remedies.

11. The Complaint fails due to waiver and limitations defenses.

12. The Complaint fails due to full performance.

13. The Complaint fails because the Plaintiff failed to satisfy conditions precedent prior to bringing the lawsuit.

14. The Complaint fails due to the Plaintiff's failure to perform.

15. The Complaint fails due to the Plaintiff's rescission of any agreement between her and a Defendant(s).

20. The Plaintiff failed to mitigate his damages.

21. Any damages the Plaintiff claims in this lawsuit is a result of his conduct or the conduct of someone not under the control of any Defendant.

22. The Defendant(s) is entitled to an Off-Set that reduces the Plaintiff's damages, meets the Plaintiff's damages, and/or exceeds the Plaintiff's damages.

## COUNTERCLAIMS

NOW COME the defendants, Genuine Food Lab, LLC ("Genuine Food"), and Jeffrey Mills (collectively the "Counterclaim Plaintiffs") and bring Counterclaims against Timoleon Panagopoulos ("Panagopoulos"), paragraph by paragraph as follows:

## PARTIES

1. Genuine Food is a Delaware limited liability company with a principal place of business located in new York, New York.

2. Jeffrey Mills is an individual with a residence in the State of Maine.

3. Panagopoulos is an individual who resides in Charlestown, Massachusetts. He has functioned as a sole proprietor and independent contractor, working as a distributor in the wholesale foods industry. Further, he is a Member of EHFAR, LLC ("EHFAR"), a Massachusetts limited liability company.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. §§ 2201 and 1332, where the Plaintiff resides in Massachusetts, and defendant Mills resides in Maine. Further, defendant, Genuine Food, is a Delaware limited liability company, and its principal place of business is New York, New York.

5. The amount in controversy exceeds $75,000.

8

6. Venue is proper in the Eastern District, where the Plaintiff resides in the district, and much of the conduct occurring in Massachusetts took place in the Eastern District.

## FACTS

7. Panagopoulos works as a distributor in the wholesale foods industry.

8. Genuine Food sought to utilize Panagopoulos' services in order to purchase food products at more competitive rates.

9. The arrangement was quite simple. Genuine Food would contact food manufactures and supplies and obtain a quote for an order. Genuine Food would then contact Panagopoulos and explain the quote and ask him if he could get a more competitive price from another source. In the event Panagopoulos could get a better price, Genuine Food would endeavor to purchase the food from that source. Panagopoulos would get paid a commission from the source / provider.

10. Upon information and belief, Panagopoulos got paid commissions from several manufactures and suppliers pursuant to this arrangement.

11. Panagopoulos was never an employee of Genuine Food.

12. Panagopoulos was at all times an independent contractor, who had commissions arrangements with various manufacturers and suppliers of food products. He served as a distributor in a classic middle-person role, making contacts and receiving payment from the parties making the sales.

13. Panagopoulos was not required to have an exclusive arrangement with Genuine Food, and he was free to set his own hours, work from whatever location he chose, and contract with other buyers similarly situated as Genuine Food.

14. Upon information and belief, Panagopolous provided his services to other buyers of food products.

15. Panagopoulos also agreed to share commissions with Genuine Food relative to manufacturers and suppliers whom Genuine Food directed to Panagopoulos. Genuine Food did place Panagopoulos in connect with manufacturers and suppliers, but he failed to share the commissions with Genuine Food.

16. Panagopoulos signed a W9 Form attesting that EHFAR was an independent contractor and could receive payment from Genuine Food in the event that the parties entered into a profitable deal with a third-party supplier.

17. Panagopoulos invoiced Genuine Food as a vendor in seeking payment for his services, which was a tacit admission that he was never an employee of Genuine Food.

## **CLAIMS**

### **COUNT I**
**(Breach of Contract)**

18. Genuine Food relies upon and incorporates by reference the paragraphs above as if specifically set forth herein.

19. Panagopoulos entered into an agreement to provide Genuine Food with compensation relative to manufacturers and suppliers in which Genuine Food provided to Panagopoulos as sales leads.

20. Upon information and belief, Panagopoulos acted as an independent contractor / distributor and operated as a sole proprietor at times, as well as a Member of EHFAR.

21. Genuine Food place leads with Panagopoulos.

22. Upon information and belief, Panagopoulos received compensations due to sales leads provided by Genuine Food. Panagopoulos failed to pay any renumeration to Genuine Food relative to compensation he received through its leads.

Wherefore, Genuine Food has been damaged and continues to be damaged by Panagopoulos, and it seeks all damages available at law, including legal fees and costs.

## COUNT II
### (Breach of Covenant of Good Faith and fair Dealing)

23. Genuine Food relies upon and incorporates by reference the paragraphs above as if specifically set forth herein.

24. Panagopoulos entered into an agreement to provide Genuine Food with compensation relative to manufacturers and suppliers in which Genuine Food provided to Panagopoulos as sales leads.

25. Upon information and belief, Panagopoulos acted as an independent contractor / distributor and operated as a sole proprietor at times, as well as a Member of EHFAR.

26. Genuine Food place leads with Panagopoulos.

27. Upon information and belief, Panagopoulos received compensations due to sales leads provided by Genuine Food. Panagopoulos failed to pay any renumeration to Genuine Food relative to compensation he received through its leads.

28. Panagopoulos's attempts to recast his independent contractor role into an employment agreement violates the covenant of good fair and fair dealing that accompanies any business contract.

Wherefore, Genuine Food has been damaged and continues to be damaged by Panagopoulos, and it seeks all damages available at law, including legal fees and costs.

## COUNT III
**(Abuse of Process)**

29. Genuine Food and mills rely upon and incorporates by reference the paragraphs above as if specifically set forth herein.

30. Panagopoulos's attempts to recast his independent contractor role into an employment agreement violates the covenant of good fair and fair dealing that accompanies any business contract.

31. The conduct noted herein also serves as an abuse of process relative to any claims Panagopoulos has asserted relative to wages and/or the employment context. Further, any claims that he has asserted relative to defendant Mills serving in an individual capacity also serves as an abuse of process.

Wherefore, Genuine Food has been damaged and continues to be damaged by Panagopoulos, and it seeks all damages available at law, including legal fees and costs.

**THE DEFENDANTS/COUNTERCLAIM PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE.**

Respectfully submitted,

GENUINE FOOD LAB, LLC, AND JEFFREY MILLS

By Their Attorneys,

 /s/ John W. Dennehy
_____
John W. Dennehy, P.C., BBO No. 658247
DENNEHY LAW
127 Main Street, Suite 1
Nashua, NH 03060
Telephone: (603) 943-7633
jdennehy@johnwdennehy.com

Dated: November 18, 2021

## **CERTIFICATE OF SERVICE**

This shall hereby certify and acknowledge that I, John W. Dennehy, have filed the above-referenced pleading through the CM/ECF system, and it will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to non-registered participants and all counsel of record on November 18, 2021, via First Class Mail and Email, upon all counsel of record as follows:

Jonathan D. Plaut, Esq.
COHAN RASNICK PLAUT LLP
One State Street, Suite 1200
Boston, MA 02109

/s/ John W. Dennehy
_____
John W. Dennehy