UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOLEON PANAGOPOULOS,<br><br>    Plaintiff,<br><br>v.<br><br>GENUINE FOOD LAB, LLC and JEFFREY MILLS,<br><br>    Defendants. | Civil Action No. 21-cv-11873 |

**MEMORANDUM & ORDER**

BURROUGHS, D.J.

Before the Court are cross-motions for summary judgment filed by Plaintiff Timoleon Panagopoulos ("Plaintiff") and Defendants Genuine Food Lab, LLC and Jeffrey Mills ("Mills", together "Defendants"). [ECF Nos. 23, 32]. For the reasons set forth below, Plaintiff's motion for partial summary judgment, [ECF No. 23], is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment, [ECF No. 32], is DENIED.

**I.   BACKGROUND**

This matter involves a dispute about work allegedly performed by Plaintiff to benefit Genuine Food Labs, LLC ("Genuine Food" or the "Company"), which, in or around 2020, was awarded a contract under the federal Child and Adult Care Food Program ("CACFP") to make and distribute thousands of weekly meal boxes. See [ECF No. 29-8 ¶ 5]. In April 2020, Plaintiff, who has extensive experience in the food and beverage industry, including as a food broker, agreed to help Genuine Food meet its obligations under the CACFP contract. [ECF No.

29-8 ¶ 4]. Although the parties agree that there was a general agreement, the underlying terms are disputed. [ECF No. 29-8 ¶¶ 2, 4, 7–8; ECF No. 33 ¶¶ 1, 3, 4–5].

Further, despite the fact that there was at least some agreement between the parties concerning Plaintiff's services, Plaintiff did not have an employment contract, [ECF No. 29-8 ¶ 9], "was never paid anything by Genuine Food[]," [id. ¶ 29], and was not given a Company laptop or cellphone, [ECF No. 33 ¶ 17]. He was, however, identified as "Procurement Specialist" on Genuine Food's corporate organizational chart, [ECF No. 29-8 ¶ 12], given a Company e-mail address, [id. ¶ 14], permitted to, at minimum, note his relationship with the Company on LinkedIn, compare [ECF No. 29-8 ¶ 16] with [ECF No. 33 ¶ 21], and granted access to and made use of the Company's Slack channel, [ECF No. 29-8 ¶¶ 17–19].

Nearly all other aspects of Plaintiff's relationship with Genuine Food are disputed, including, most importantly for present purposes, his alleged salary, compare [ECF No. 29-8 ¶ 7 (Plaintiff alleges he was promised a salary between $150,000 to $250,000)] with [ECF No. 33 ¶ 10 ("Mills never offered to pay [] Plaintiff any monies . . . .")], as well as the scope of work Plaintiff performed, compare [ECF No. 29-8 ¶¶ 37, 40–46 (Plaintiff asserting that he helped with, among other things, employee recruiting, human resources ("HR"), procurement, warehouse management, product selection, accounts payable, contract negotiations)] with [ECF No. 33 ¶¶ 25–26 (Defendants claiming that Plaintiff served only as a food broker who was paid by others)], and whether executives at Genuine Food directed the time, place and manner of his work, compare [ECF No. 29-8 ¶ 35] with [ECF No. 33 ¶ 19].

Plaintiff stopped providing any services to the Company in or around Fall 2020, [ECF No. 29-8 ¶ 20; ECF No. 28 ¶ 37], and, believing he was owed compensation, sent Genuine Food an invoice from his limited liability company, EHFAR, LLC. [ECF No. 28-9 ¶ 103; ECF No. 33

¶ 56]. The invoice has not been paid and Defendants contend that neither Mills nor Genuine Food owes Plaintiff any money because, as a food broker, he earns commissions which are paid by the food seller and not the end purchaser, in this case Genuine Food. See [ECF No. 33 ¶ 34].

In August 2021, Plaintiff sued Defendants in Massachusetts state court, bringing counts against Genuine Food and Mills for Massachusetts Wage Act violations (Count I), promissory estoppel (Count III), fraud (Count IV), negligent misrepresentation (Count V), deceptive business practices in violation of Mass. Gen. Laws ch. 93A, § 11 (Count VII), and counts solely against Genuine Food for breach of contract and the implied covenant of good faith and fair dealing (Count II) and unjust enrichment (Count VI). [ECF No. 1-1 at 10–15]. On November 18, 2021, Defendants removed the action to this Court, [ECF No. 1 at 1], answered the complaint, and filed counterclaims for breach of contract (Counterclaim I), breach of the covenant of good faith and fair dealing (Counterclaim II), and abuse of process (Counterclaim III). [ECF No. 6 at 10–12]. Defendants later amended their answer and counterclaims to include a count for recoupment. [ECF No. 17 at 17–18].

On July 18, 2022, Plaintiff moved for partial summary judgment on Count I and all counterclaims. [ECF No. 23]. Defendants opposed on August 12, 2022, [ECF No. 28], and Plaintiff filed a reply on August 26, 2022, [ECF No. 30]. On August 30, 2022, Defendants separately moved for summary judgment on all of Plaintiff's claims, [ECF No. 32], Plaintiff opposed on September 2, 2022, [ECF No. 35], and Defendants replied, [ECF No. 37].

## II.  LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted). That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."

4

Cochran, 328 F.3d at 6 (citation omitted).  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012) (citation omitted), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation[,]" Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

## III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff asks that the Court find that (1) he was an employee of Genuine Food, (2) Defendants' counterclaims each fail, and (3) Defendants' abuse of process counterclaim violates the Massachusetts anti-SLAPP statute.

### A.     Plaintiff's status as an employee is disputed

Plaintiff first seeks summary judgment on whether he was an employee of Genuine Food as a matter of state law.  [ECF No. 24 at 11–15].  Defendants respond that he has failed to properly plead a claim under the Massachusetts Wage Act ("MWA") and that there are genuine disputes of material fact that preclude summary judgment.  [ECF No. 28 at 11–12].

The MWA "requires prompt and full payment of wages due." Camara v. Attorney Gen., 941 N.E.2d 1118, 1121 (Mass. 2011).  "To receive protection under the Wage Act, an individual must 'provide services to an employer as an employee (rather than as an independent contractor).'" DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, 85 (D. Mass. 2019) (quoting Sebago v. Bos. Cab Dispatch, Inc., 28 N.E.3d 1139, 1146 (Mass. 2015)).  The test to

determine whether an individual qualifies as an employee, as set forth in Mass. Gen. Laws ch. 149, § 148B(a), states that a person

> shall be considered to be an employee . . . unless: (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B(a). "The statute presumes that a worker is an employee and requires the employer to satisfy all three prongs by a preponderance of the evidence to show that the worker is an independent contractor instead." DaSilva, 377 F. Supp. 3d at 85–86. Here, although Genuine Foods satisfies the third prong, the first two involve disputed matters of material fact.

First, there is a genuine dispute concerning the extent to which Plaintiff's activities were controlled or directed by the Company. Plaintiff alleges that he was "instructed in his work" by Genuine Food's Chief Operating Officer (Frank Klein) Senior Director of Operations (George Wright), and CEO (Mills)[1], but this assertion is directly contradicted by Mills' affidavit. This is a quintessential dispute of fact that must be resolved by a jury.

The second element—whether the service performed is outside the usual course of the business of the employer—depends on (1) the service Plaintiff performed and (2) Genuine Food's usual course of business, both of which are disputed. Plaintiff argues that he performed a wide range of services for Genuine Food, including, among others, employee recruiting, food procurement, and contract negotiation. Defendants counter that he grossly overstates his

---

[1] The Court notes that the testimony cited by Plaintiff does not clearly indicate that his activities were controlled by officers of the Company.

6

contributions and acted only as an external food broker. With respect to Plaintiff's claim that he worked in an HR capacity, for example, Defendants argue that he merely recommended a few people for jobs at the Company, which is a far cry from acting as an HR employee. As for Genuine Food's usual course of business—and the question as to whether Plaintiff performed services that were within that scope—the parties seemingly agree that the Company "operates in a meal packaging space, delivering quality wholesome meals to schools K-12, higher education, senior and hospital facilities, and throughout various communities." See [ECF No. 17 ¶ 9]. The Court, however, cannot determine on the record before it whether food brokerage—the one service the parties agree that Plaintiff performed—is part of the Company's usual course of business. Although the Company requires large amounts of food to fulfill its contractual obligations, it is unclear whether procurement of that food is part of its usual day-to-day operations.

Lastly, because the parties agree that Plaintiff operated an independent food brokerage business throughout the time-period that he alleges he was employed by Genuine Food, for the purposes of this motion, the Court assumes that Genuine Food has made out the third factor of the test.

Accordingly, because there is a genuine dispute as to the first two prongs, Plaintiff's motion for summary judgment on his status as an employee is DENIED.

### B.     Defendants' Counterclaims

Next, Plaintiff moves for summary judgment on all of Defendants' counterclaims, including for breach of contract and the covenant of good faith and fair dealing (Counterclaims I & II), abuse of process (Counterclaim III), and recoupment (Counterclaim IV). Defendants contend that summary disposition is inappropriate for each count.

       i.    <u>Breach of Contract and the Covenant of Good Faith and Fair Dealing</u>

As a factual predicate for the breach of contract claims, Defendants contend that part of the agreement reached with Plaintiff included that "he would share his payment from any food supplier in which Genuine Food provided him with the initial contact." [ECF No. 33 ¶ 5]. They further allege that Plaintiff did, in fact, receive compensation from food sellers that Genuine Food introduced him to, but that Plaintiff did not pay Genuine Food any part of those commissions. [ECF No. 17 ¶¶ 41, 46]. Plaintiff appears to deny the existence of any such agreement, <u>see</u> [ECF No. 24 at 18], and further argues that Genuine Food "never introduced Plaintiff to any buyers where any business was transacted or resulted in sales[,]" and therefore even if there was such an agreement, he could not have breached it and there would be no damages, [<u>id.</u>].

The Court is thus confronted with dueling statements of facts and affidavits that suggest two alternatives—first, that there was an agreement wherein Plaintiff would pay Genuine Food a sort of "finders fee" in instances where the Company connected Plaintiff to the seller, or second, that no such agreement existed. Furthermore, the record provides no conclusive evidence of any commissions paid to Plaintiff by a food seller that was introduced to him by Defendants. Defendants argue such sales occurred; Plaintiff contends they did not. These are factual disputes that, again, are properly reserved for the factfinder at trial, and Plaintiff's motion for summary judgment on Defendants' breach of contract counterclaims is therefore <u>DENIED</u>.

      ii.    <u>Abuse of Process</u>

As best as the Court can discern, Defendants assert that Plaintiff's "attempt[] to recast his independent contractor role into an employment agreement violates the covenant of good faith and fair dealing[,]" and that such conduct "also serves as an abuse of process relative to any

8

claims [he] has asserted relative to wages and/or the employment context." [ECF No. 17 ¶¶ 49, 51]. Defendants further allege that Plaintiff "cannot possibly expect to prevail upon his wage claim" which they argue "was not filed in an effort to seek compensation" but instead "in retaliation of [*sic*] not being given an Aston Martin"—in other words, getting a windfall—and because Plaintiff "ha[s] a particular dislike of Mills and wanted to sue him personally." [Id. ¶ 52]. Plaintiff asks the Court to grant summary judgment on this counterclaim.

> Under Massachusetts law,
>
> The elements of an abuse of process claim are 'that "process" was used, for an ulterior or illegitimate purpose, resulting in damage.' Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636, 925 N.E.2d 513 (2010) (Millennium). To sustain the claim, 'the fact finder must find that process was used "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed."' Id. (quoting Quaranto v. Silverman, 345 Mass. 423, 426, 187 N.E.2d 859 (1963). Filing a groundless claim is not an element of the tort, but it is relevant, because it may "tend[ ] to show that the process was used for an ulterior purpose." Fishman v. Brooks, 396 Mass. 643, 652, 487 N.E.2d 1377 (1986). However, the ulterior purpose element is not satisfied merely by a showing that a person commenced litigation knowing it was groundless. Beecy v. Pucciarelli, 387 Mass. 589, 596, 441 N.E.2d 1035 (1982).
>
> \*\*\*
>
> In an abuse of process claim, in contrast to a claim for malicious prosecution, such a motive does not alone suffice to show ulterior purpose. Rather, the ulterior purpose must be to gain some collateral advantage . . . .
>
> \*\*\*
>
> An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly. See, e.g., Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 640, 925 N.E.2d 513 (2010) (Millennium) (ulterior purpose of suit was to disqualify defendant from serving as divorce attorney to plaintiff's wife); Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 408–409, 772 N.E.2d 552 (2002) (evidence police encouraged criminal prosecution to preempt tort and civil rights claims sufficient to put abuse of process claim to jury). Contrast Ladd v. Polidoro, 424 Mass. 196, 199–200, 675 N.E.2d 382 (1997) (groundless claim and harm to defendant insufficient to show abuse of process, absent showing of ulterior motive).

Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 534–35 (Mass. 2011); see Lund v. Henderson, 22 F. Supp. 3d 94, 108 (D. Mass. 2014).

Here, the Court has already found that there are genuine disputes of fact that preclude summary disposition of Plaintiff's claim that he was an employee and therefore owed unpaid wages. The existence of a genuine dispute over a key issue underpinning Plaintiff's claim weighs against a finding that his complaint is groundless. The potential merits of the suit, however, are not dispositive. More determinative is the fact that Defendants have not asserted that Plaintiff has any ulterior purpose in bringing this suit beyond (1) his dislike for Mills, (2) his desire to sully Genuine Food's reputation, and (3) his desire for a substantial sum of money equivalent to a high-end sports car. [ECF No. 17 ¶ 52]. Under Massachusetts law, a desire to harm the other party is insufficient to sustain a claim for abuse of process, and therefore the Court disregards Defendants' arguments that Plaintiff filed this lawsuit because he disliked Mills or wanted to tarnish Genuine Food's reputation. The only argument that remains, then, is whether Plaintiff, pursuant to his agreement with Defendants, was due an Aston Martin-sized amount of compensation, and that question—whether he was paid what he was owed for services performed—is at the heart of his complaint. Plaintiff cannot be said to be pursuing an "ulterior purpose" when that purpose is the exact relief requested in his complaint. Accordingly, Plaintiff's motion for summary judgment on Defendants' abuse of process counterclaim is GRANTED.

Plaintiff relatedly asks the Court to find that Defendants' counterclaim for abuse of process violates the Massachusetts anti-SLAPP Statute, Mass. Gen. Laws ch. 241, § 59H, and to award damages, attorneys' fees, and costs as provided for by the statute.

Defendants, in turn, argue that the anti-SLAPP statute is a procedural remedy that is not available in federal court. In support of this proposition, Defendants cite to Stuborn Ltd. P'ship v. Berstein, 245 F. Supp. 2d 312 (D. Mass. 2003), which, unfortunately for them, is no longer good law following Godin v. Schencks in which the First Circuit held that Maine's anti-SLAPP statute, which is in all relevant respects the same as the Massachusetts statute, "was a substantive provision, and thus applicable to pendant state claims in federal court[,]" Radfar v. City of Revere, No. 20-cv-10178, 2021 WL 4121493, at *3 (D. Mass. Sept. 9, 2021) (discussing Godin v. Schenks, 629 F.3d 79, 88–89 (1st Cir. 2010)). Notwithstanding that the Commonwealth's anti-SLAPP statute is applicable to the state law claims before the Court, the Court DENIES Plaintiff's request for relief under the law. Mass. Gen. Laws ch. 231, § 59H allows a party seeking to exercise their rights under the statute to "bring a special motion to dismiss" so that the Court may hear and resolve the motion "as expeditiously as possible." The statute further provides that the "special motion to dismiss may be filed within sixty days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Mass. Gen. Laws ch. 231 § 59H. Relevant here, after Defendants filed their counterclaim for abuse of process on November 18, 2021, [ECF No. 6], Plaintiff responded by raising the state anti-SLAPP statute in its answer filed on December 8, 2021, [ECF No. 7], but never filed the "special motion" allowed for by the statute. Even in Plaintiff's memorandum in support of his motion for partial summary judgment, he does not seek dismissal of the abuse of process claim pursuant to the statute. In short, instead of filing a special motion to dismiss Defendants' counterclaim for abuse of process, Plaintiff moved for summary judgment on that claim. The Court declines to

11

construe his motion for summary judgment as the "special motion to dismiss" imagined by the statute, and denies his request for the damages, including attorneys' fees and costs, available under the anti-SLAPP statute.

### iii. Recoupment

As discussed, Defendants deny that Plaintiff was ever an employee but argue, in the alternative, that if he is found to have been an employee, Genuine Food is "entitled to receive all monies it paid to Plaintiff, as well as any monies he received for commissions from others while allegedly serving as an employee for [*sic*] Genuine Food." [ECF No. 17 ¶ 54]. Defendants have clarified that if Plaintiff is found to be an employee, this claim for recoupment seeks "all commissions that the Plaintiff received during the putative period of employment." [ECF No. 28 at 18].

The Massachusetts Supreme Judicial Court has offered the following summary of the defense of recoupment:

> "Recoupment was a common law concept, a defendant's claim arising out of the transaction that formed the basis of the plaintiff's claim; . . . it served, if the defendant succeeded on it, to reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant." Bose Corp. v. Consumers Union of U.S., Inc., 367 Mass. 424, 427–28, 326 N.E.2d 8 (1975). Beginning in the early Nineteenth Century, this court applied the doctrine to contract actions, recognizing the right of a defendant, facing suit for nonpayment on a contract, to assert defensively within the same action a claim for damages due to the plaintiff's own nonperformance of the same contract. See Taft v. Inhabitants of Montague, 14 Mass. 282, 285 (1817), *overruling* Everett v. Gray, 1 Mass. 101 (1804). See also Carey v. Guillow, 105 Mass. 18, 19–20 (1870) (discussing cases).

May v. SunTrust Mortg., Inc., 7 N.E.3d 1036, 1041–42 (Mass. 2014). The First Circuit has added its own gloss, stating that a defendant may "defend against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction." In re Sheedy, 801 F.3d 12, 21 (1st Cir. 2015) (citation omitted).

As discussed above, the record reflects that the parties do not dispute the existence of an agreement between the parties wherein Plaintiff would, at minimum, assist in procuring food for Genuine Food. Although Defendants deny that they agreed to retain Plaintiff as an employee, nowhere do they assert that Plaintiff did not perform under this agreement or, in other words, that he did not assist in procuring food for Genuine Food. Because Defendants have not alleged that Plaintiff failed to perform, they cannot sustain a counterclaim for recoupment. Accordingly, Plaintiff's motion for summary judgment on Defendants' counterclaim for recoupment is GRANTED.

IV. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment on all of Plaintiff's claims arguing that (1) his claim for unpaid wages under Mass. Gen. Laws ch. 149, § 148 fails because it should have been pled as a misclassification claim and also fails to state a claim because he did not allege an hourly wage or an annual salary, (2) Plaintiff's claims for breach of contract, promissory estoppel, and *quantum meruit* fail for want of damages, and (3) Plaintiff's claims for promissory estoppel, and *quantum meruit*, as well as fraud, negligent misrepresentation, and unfair and deceptive business practices fail to state a claim. [ECF No. 34 at 12–20].

A. **Misclassification & Failure to Plead**

Defendants' first argument, that Plaintiff should have filed a misclassification claim, fails at the threshold. Plaintiff is not alleging that he was misclassified as an independent contractor, and therefore had no obligation to assert a claim under the independent contractor statute. Plaintiff instead contends that as an employee, he is owed unpaid wages for services performed on behalf of Genuine Food and that claim is properly brought under Mass. Gen. Laws ch. 149, § 148. Defendants' secondary argument, that Plaintiff's claim fails because he did not plead a

wage or salary, is contradicted by the record. Plaintiff has alleged that he was promised payment of at least $150,000 for the period of time he agreed to perform services for the Company. See, e.g., [ECF No. 25 ¶ 7]. Defendants contest this, but the Court notes that there is nothing in the record before it that definitively disproves Plaintiff's assertion. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim under Mass. Gen. Laws ch. 149, § 148 is DENIED.

### B.     Lack of Damages

Defendants next allege that Plaintiff's claims for breach of contract, promissory estoppel, and *quantum meruit* fail because there was no meeting of the minds concerning Plaintiff's compensation and because he did not suffer damages. Defendants note that it is Plaintiff's burden to prove the existence of a contract and that he has failed to do so because he admitted that the parties did not agree to a specific amount of compensation. This argument fails because it misconstrues the record by asserting that Plaintiff has admitted there was no meeting of the minds regarding his compensation even though Plaintiff has repeatedly alleged that the parties agreed that he would be paid at least $150,000. That there was the possibility that he could be paid more depending on the future performance of the Company does not demonstrate the absence of an enforceable agreement.

Defendants further argue that Plaintiff cannot show that he was damaged because he ended up making, through other commissions received during the relevant time period, at least the amount of money he testified that he anticipated making through his work for Genuine Food. [ECF No. 34 at 18–19]. This argument also fails. That Plaintiff's other earned commissions might have totaled the amount that he expected to be paid by Genuine Food does not mean that he was not damaged. It shows only that he was operating a successful food brokerage business

during the time that he alleges he was employed by Genuine Food. Accordingly, Defendants' motion for summary judgment is DENIED to the extent it is premised on no meeting of the minds as to Plaintiff's compensation and the absence of damages.

### C.     Defendants' Catchall Arguments

Defendants argue that Plaintiff's claims for promissory estoppel, fraud, negligent misrepresentation, *quantum meruit*, and unfair and deceptive business practices fail to state a claim because Plaintiff's agreement to accept a lump sum payment after he finished providing services to the Company somehow fatally undermines his common law claims and his 93A claim. With respect to Plaintiff's claims for fraud, negligent misrepresentation, and promissory estoppel, Defendants do not explain why such an admission renders those claims void, and the Court is not aware of any case law that compels that conclusion. As to Plaintiff's 93A claim, the Court finds that there is a genuine dispute regarding whether Defendants violated the statute. Lastly, Defendants appear to ask that the Court find that Plaintiff cannot recover under a theory of *quantum meruit*, but Defendants' argument amounts to an unsupported conclusory statement that Plaintiff's argument "fails to state a claim," which is insufficient to preclude Plaintiff from recovering on such a theory. Accordingly, Defendants' motion for summary judgment is DENIED to the extent it seeks a finding that Plaintiff's claims for violation of 93A, promissory estoppel, fraud, and negligent misrepresentation fail to state a claim. Defendants' motion is further DENIED to the extent it asks the Court to find that Plaintiff cannot recover under a theory of *quantum meruit*.

### V.     CONCLUSION

For the reasons set forth above, Plaintiff's motion for partial summary judgment, [ECF No. 23], is GRANTED in part as to Defendants' counterclaims for abuse of process and

recoupment and <u>DENIED</u> in all other respects, and Defendants' motion for summary judgment, [ECF No. 32], is also <u>DENIED</u>.

**SO ORDERED.**

November 2, 2022                                                        /s/ Allison D. Burroughs
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE